UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ROGER T.                                           :
                                                   :
v.                                                 :     C.A. No. 18-00053-WES
                                                   :
NANCY A. BERRYHILL, Acting                         :
Commissioner of the Social Security                :
Administration                                     :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on February 7, 2018 seeking to reverse the Decision of the Commissioner. On July 28, 2018, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (ECF Doc. No. 13). On September 26, 2018, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (ECF Doc. No. 15). A hearing was held on January 14, 2019. The Court heard argument and ordered that the Administrative Record be supplemented with additional medical evidence reviewed in connection with Plaintiff's subsequent application and award of benefits.

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning

of the Act. Consequently, I recommend that Plaintiff's Motion to Reverse (ECF Doc. No. 13) be DENIED and that the Commissioner's Motion to Affirm (ECF Doc. No. 15) be GRANTED.

I. **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on January 31, 2012 (Tr. 143-144) alleging disability since January 9, 2012. Plaintiff's date last insured is December 31, 2016. The application was denied initially on May 31, 2012 (Tr. 67-78) and on reconsideration on July 21, 2012. (Tr. 80-92). Plaintiff requested an Administrative Hearing. On May 28, 2013, a hearing was held before Administrative Law Judge Berry H. Best (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. 36-63). The ALJ issued an unfavorable decision to Plaintiff on June 24, 2013. (Tr. 16-35). The Appeals Council denied Plaintiff's request for review on September 2, 2014. (Tr. 1-4). Plaintiff then filed an action in this Court on December 8, 2014. (Tr. 415-417). The Commissioner assented to remand which the Court ordered on October 19, 2015. (Tr. 419-421).

In the interim, Plaintiff filed a new application for disability and was subsequently found disabled beginning June 25, 2013. (Tr. 429). The Appeals Council issued an Order dated December 14, 2015 effectuating the Order of this Court and remanding the case for hearing by the ALJ. (Tr. 429-432). The Appeals Council concluded that the subsequent approval finding disability beginning June 25, 2013 was supported by substantial evidence and affirmed that decision. Id.

The Appeals Council directed the ALJ to further consider the diagnosis of severe Lyme Disease and the opinion of Dr. Gloor and to rectify certain vocational issues. (Tr. 429-430). On September 13, 2016, another hearing was held before the ALJ at which time Plaintiff, Plaintiff's

attorney and a VE appeared. (Tr. 367-388). On November 28, 2016, the ALJ issued a decision again denying Plaintiff's claims. (Tr. 336-356). On February 3, 2017, Plaintiff filed exceptions to the ALJ's decision. (Tr. 357-362). The Appeals Council declined to assume jurisdiction, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 329-335). A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in assessing the impacts of his Lyme Disease and mental impairments and the opinions of treating sources for such conditions.

The Commissioner disputes Plaintiff's claims and contends that the ALJ's findings are supported by substantial evidence and must be affirmed.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human

Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to

Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

**IV.     THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe,

making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527©. However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether

the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must

consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

    **1.**    **Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

    (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote

v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

V.     APPLICATION AND ANALYSIS

A.     The ALJ's Decision

On remand, the ALJ reconsidered whether Plaintiff was disabled for the limited period January 9, 2012 through June 24, 2013 (the "relevant period"). (Tr. 351). The ALJ was aware that Plaintiff filed a subsequent claim and had been found disabled for the period commencing June 25, 2013. (Tr. 341, 348). At Step 2, the ALJ on remand found that Plaintiff's degenerative disc/joint disease, Lyme Disease, depression and anxiety were "severe" impairments. (Tr. 343). At Step 3, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the severity of any Listed impairments. (Tr. 344). The ALJ assessed an RFC for a limited range of light work subject to several non-exertional limitations related to Plaintiff's mental impairments. (Tr. 346). At Step 4, the ALJ concluded that Plaintiff's RFC precluded him from performing his past relevant work as a laboratory technician. (Tr. 349). However, at Step 5, the ALJ concluded that Plaintiff could perform other unskilled, light occupations and thus he was not disabled during the relevant period. (Tr. 350-351).

B.     The ALJ Property Evaluated Plaintiff's Lyme Disease

This case was the subject of an Assented-to Remand Order in 2015. See Roger T. v. Colvin, C.A. No. 1:14-CV-00487-LDA (found at Tr. 420-421). On remand, the ALJ was directed to further evaluate Plaintiff's Lyme Disease and the opinions of Dr. James Gloor, a treating physician. Id.

On remand, the ALJ accepted Dr. Gloor's Lyme Disease diagnosis despite the lack of positive laboratory findings and gave Plaintiff the "benefit of some doubt" about whether it imposed sufficient limitations to meet the Step 2 severity standard. (Tr. 343, n.6). As directed, the ALJ revisited his evaluation of Dr. Gloor's opinions and gave them "minimal/less probative weight." (Tr. 348).

Plaintiff first argues that the ALJ erred by mischaracterizing Dr. Gloor as "simply" a primary care physician. (ECF Doc. No. 13 at p. 11). Plaintiff describes Dr. Gloor as a Lyme Disease "Specialist." Id. He relies in part upon Dr. Toder's reference to him being diagnosed by a "specialist in Lyme disease." (Tr. 263). Dr. Toder was a consultant who examined Plaintiff on May 21, 2012. (Exh. C4F). Dr. Toder does not indicate that he reviewed any of Dr. Gloor's records or researched his credentials. In fact, he indicates that "reviewing [Plaintiff's] Lyme Disease workup would be recommended to see how this diagnosis was ascertained." (Tr. 264). Thus, it reasonably appears that the label "specialist" in Dr. Toder's report came from the history given by Plaintiff himself. (Tr. 263). In her Brief, the Commissioner relates Dr. Gloor's background as being a "general family practitioner, with no specialization, and with only one year of residency training." (ECF Doc. No. 15-1 at p. 16). Thus, she argues there is no basis in the record to conclude that the ALJ erred in designating Dr. Gloor as a "primary care physician." (Tr. 348).

Since Plaintiff did not file a reply brief or otherwise rebut the licensing data submitted by the Commissioner regarding Dr. Gloor, it is undisputed. Further, he has offered no persuasive support for his claim that Dr. Gloor should have been deemed a specialist by the ALJ or that it mattered in this case. It is clear from the ALJ's decision that he thoroughly considered Dr. Gloor's

opinions in the context of the entire record, and articulated good and supported reasons for giving limited weight to such opinions. For instance, the ALJ noted the discrepancy between Dr. Gloor's opinions and other objective findings including Dr. Toder's report. Dr. Toder's examination was largely unremarkable, and he found no evidence of "active swollen joints" and "no active joint effusion or clinical manifestations…that would be felt to be consistent with active Lyme disease." (Tr. 264). The ALJ also reasonably relied on Plaintiff's intermittent treatment history with Dr. Gloor and his history of conservative treatment with antibiotics and over-the-counter pain medicine. (Tr. 347). Plaintiff's argument is also undercut by the consultative medical opinions[1] received in connection with his subsequent application. (See ECF Doc. No. 17). In the end, Plaintiff has shown no error by the ALJ on remand in his evaluation of Plaintiff's Lyme Disease or the opinions of Dr. Gloor.

### C. The ALJ Properly Evaluated Plaintiff's Mental Impairments

The ALJ found that Plaintiff's depression and anxiety were severe impairments at Step 2 and incorporated multiple non-exertional limitations into his RFC finding related to such impairments. The relevant period under consideration was January 9, 2012 through June 24, 2013. The ALJ based his RFC finding largely on the April 12, 2012 and July 3, 2012 opinions of the nonexamining state agency psychologists. (Tr. 349). He also gave the opinions of Dr. Pogacar, a treating psychiatrist, limited weight as being inconsistent with his own treatment notes, the overall

---

[1] On March 17, 2015, Dr. Bacalla endorsed the DDS finding that Plaintiff did not have any severe physical impairments based on the available medical evidence. (ECF Doc. No. 17 at p. 9). Plaintiff also was examined by Dr. Dionisopoulos on December 30, 2014 who acknowledged his history of Lyme Disease and found no motor or neurosensory deficits, no cardiac involvement, and that Plaintiff did not appear to be in acute distress, and was alert, oriented and showed no signs of memory loss. (ECF Doc. No. 17-3 at pp. 2-4).

record and Plaintiff's activities. (Tr. 29, 348). Plaintiff has shown no error in the ALJ's treatment of Dr. Pogacar's opinions.

Additionally, Plaintiff attempts to leverage his subsequent award of disability as a basis for finding error. However, a subsequent award of disability benefits is not per se relevant to an earlier period, even where the onset of disability is the day after the ALJ's earlier decision. See Gill v. Colvin, No. 11-CV-462-ML, 2013 WL 1673112, at *5 (D.R.I. Apr. 17, 2013) ("It is true that, in this case, the plaintiff's subsequent applications were granted, establishing his disability as of the day following the ALJ's unfavorable decision. However, that determination cannot serve to increase, retroactively, the ALJ's obligation to develop the record before her. Moreover, it is well-established law that the resolution of conflicting evidence is the ALJ's prerogative."), aff'd, 13-1792 (1st Cir. April 9, 2014) (per curiam); DiAntonio v. Colvin, 95 F. Supp. 3d 60, 73 (D. Mass. 2015) ("The First Circuit addressed a similar question to the one currently before this Court in Gill v. Colvin. There, the First Circuit held that a subsequent favorable decision letter with an onset date just a day after the denial in the previous application does not constitute new and material evidence which allows a remand under 42 U.S.C. section 405(g).[2] An award letter with a very brief summary of evidence to support the award does not by itself amount to new and material evidence.") (citations omitted). As discussed previously, Plaintiff was found to be disabled as of June 25, 2013 based largely on the 2015 opinion of Dr. Killenberg, a consulting state agency psychologist. Plaintiff received such award in a determination dated March 17, 2015, and the ALJ was aware of such determination on remand while revisiting disability for the preceding relevant

---

[2] Plaintiff has not moved for a sentence six remand to review new and material evidence, did not seek to supplement the record before the ALJ with such evidence and did not argue to the Appeals Council in his post-decision brief dated February 3, 2017 (Tr. 357-360) that it should remand to the ALJ for consideration of the later-dated medical opinion evidence considered on the subsequent application and award of benefits.

period. The ALJ concluded that the later evidence reflected a worsening of mental functioning since June 25, 2013, and such conclusion is reasonably supported by the record.

The subsequent award of disability benefits as of June 25, 2013 was primarily the result of Dr. Killenberg's February 19, 2015 reconsideration assessment. She plainly relied upon Plaintiff's December 2013 and April 2014 inpatient psychiatric hospitalizations and Dr. Cerbo's January 2015 consultative examination report. (ECF Doc. No. 17-1 at p. 10). Although Dr. Killenberg referenced Dr. Pogacar's April 2013 opinion, she also references an August 2014 treatment note reflecting serious symptoms and recommending admission to Butler Hospital. Id. at p. 11. Dr. Killenberg was evaluating Plaintiff's condition as of June 25, 2013 and forward, and offered no express retrospective opinion about the relevant period under consideration in this appeal.

Plaintiff argues that "there is nothing otherwise remarkable about the date of June 25, 2013 other than it is the day after the prior denial in this case" under consideration. (ECF Doc. No. 18 at p. 3). Plaintiff is correct. It is an unremarkable, arbitrary day generated by the timing of the administrative proceedings. However, there must be a cutoff day somewhere on the continuum of a worsening medical condition, and the medical records reasonably suggest a worsening of Plaintiff's mental condition after June 24, 2013. Although the June 25, 2013 date is arguably artificial, the ALJ denied disability benefits but found severe mental impairments with several functional limitations for the relevant period leading up to June 24, 2013. The record reflects a worsening thereafter and two subsequent hospitalizations. (ECF Doc. No. 17). It is not unreasonable to conclude that such evidence could and did lead to a finding of disability commencing on June 25, 2013. The line has to be drawn somewhere in such cases, and Plaintiff has shown no error or irreconcilable inconsistency with these two decisions.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse (ECF Doc. No. 13) be DENIED and that Defendant's Motion to Affirm (ECF Doc. No. 15) be GRANTED. I further recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 28, 2019